**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RANDLE D. MIDDAUGH, ) | |
| ) | CASE NO. 1:13-cv-01856 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Randle D. Middaugh, Jr. ("Middaugh") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On April 4, 2011, Middaugh filed an application for SSI alleging a disability onset date of April 15, 2006. (Tr. 12.) His application was denied both initially and upon reconsideration.

*Id*. Middaugh timely requested an administrative hearing. *Id*.

On March 27, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Middaugh, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 12.) On April 17, 2012, the ALJ found Middaugh was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 18-19.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time of his administrative hearing, Middaugh is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Middaugh has a limited education and no past relevant work. (Tr. 18.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Middaugh established medically determinable, severe impairments, due to diabetes mellitus with peripheral neuropathy and diabetic retinopathy, chronic onstructive pulmonary disease ("COPD"), and sporotrichosis of the lungs. (Tr. 14.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15.) Middaugh was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 15-16.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Middaugh was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician*

Middaugh argues that the RFC determination was not supported by substantial evidence, because the ALJ failed to ascribe appropriate weight to the opinion of his treating physician, Arti Subramanian, M.D. (ECF No. 16 at 9-13.) Middaugh asserts that the ALJ, while giving "some weight" to the opinion of Dr. Subramanian's physical RFC assessment, failed to conduct a meaningful analysis of his opinion. *Id*. at 10. The Commissioner argues that the ALJ properly determined that portions of Dr. Subramanian's opinion were not supported by the objective medical evidence.[1] (ECF No. 18 at 14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and

---

[1] The ALJ did not indicate whether he considered Dr. Subramanian a treating physician. (Tr. 17.) The record demonstrates at least two treatment visits prior to Dr. Subramanian's March 23, 2012 assessment. (Tr. 614, 665.) Generally, it appears that Middaugh rarely saw the same doctor more than once during his course of treatment at MetroHealth. (Tr. 609-19, 620-786, 794-942.) Nonetheles, for the purposes of this appeal, the Court will assume Dr. Subramanian is a treating source, as the Commissioner's brief does not expressly challenge Middaugh's assertion to that effect. (ECF No. 18.)

5

laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If it is determined that a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some

---

[2] Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

6

reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On March 23, 2012, Dr. Subramanian completed a form entitled "Medical Source Statement: Patient's Physical Capacity." (Tr. 1337-1338.) He indicated that Middaugh could lift/carry 10 pounds occasionally and less than 5 pounds frequently due to "weak grip, decreased quadriceps strength, decreased sensation in feet and legs, pulmonary sporotrichosis, COPD, low back pain, and poor wound healing due to uncontrolled diabetes." (Tr. 1337.) He also found that Middaugh would be limited to standing/walking less than 4 hours per day (and less than two hours without interruption) for largely the same reasons. *Id*. Furthermore, he indicated that Middaugh would experience shortness of breath when walking moderate to long distances. *Id*. Dr. Subramanian also indicated that sitting is affected by Middaugh's impairments, but did not specify how many hours Middaugh could sit in an eight-hour workday. *Id*. As for postural activities, Dr. Subramanian opined that Middaugh was limited to only occasional balancing and stooping, and could rarely/never climb, crouch, kneel, or crawl. *Id*. In addition, Middaugh could occasionally reach, handle, push/pull, and engage in gross manipulation, but could rarely/never feel or engage in fine manipulation. (Tr. 1338.) As for environmental restrictions, Dr. Subramanian assessed restrictions in exposure to heights, moving machinery, temperature extremes, chemicals, dust, and fumes. *Id*. Dr. Subramanian indicated that Middaugh would require additional rest periods on top of regularly scheduled morning, lunch, and afternoon breaks, as well as an at-will sit/stand option. *Id*. Finally, it was noted that Middaugh's need for frequent insulin administration following blood sugar checks and breathing treatments throughout the day would interfere with work. *Id*.

The sum total of the ALJ's discussion of Dr. Subramanian's assessment is as follows:

> Some weight is given to the physical residual functional capacity assessment completed by Arti Subramanian, M.D. to the extent that it is consistent with the

8

>     objective medical evidence of record.

(Tr. 17.)

    By comparison, the ALJ made the following RFC determination:

> [T]he claimant has the [RFC] to perform sedentary work with sitting for two hours at a time and for six hours in an eight hour day, standing for 15 to 20 minutes at a time and two hours in an eight hour day, must avoid concentrated exposure to extreme heat or cold, must avoid concentrated exposure to vibration, must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and must avoid all exposure to hazardous machinery and unprotected heights. The claimant can't crawl, kneel, crouch, or climb, can occasionally balance and stoop, the claimant is limited to frequent fine and gross manipulation and frequent near and far acuity.

(Tr. 15-16.)

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 416.967(a). As such, the RFC is consistent with Dr. Subramanian's assessment as it relates to lifting/carrying, standing/walking, and sitting.[3] The RFC also adequately accounts for the environmental restrictions assessed by Dr. Subramanian. Nonetheless, the ALJ plainly rejected Dr. Subramanian's assessment as it relates to Middaugh's manipulation restrictions. The RFC allows for *frequent* fine and gross manipulation while Dr. Subramanian found Middaugh was limited to no more than "occasional" in every category, including rarely or never engaging in fine manipulation. (Tr. 1338.)

---

[3] While Dr. Subramanian opined that sitting was affected, nothing in his opinion can be construed as preventing Middaugh from sitting for six hours in an eight-hour workday in two hour increments.

9

The ALJ failed to give any explanation as to why he was rejecting the manipulative limitations assessed by Dr. Subramanian.[4] (Tr. 17.) Likewise, the ALJ makes no mention of Middaugh's purported need for an at-will sit/stand option or additional breaks – both of which were implicitly rejected by the ALJ as they were omitted from the RFC.[5] As such, the ALJ's "analysis" is inadequate and deprives this Court of the ability to conduct a meaningful review. It further failed to provide "good reasons" for rejecting Dr. Subramanian's opinion. Courts have routinely found that such a perfunctory assessment does not constitute "good reasons" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245–46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *Patterson v. Astrue*, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, 2012 WL 1413097 (S.D. Ohio Apr. 23, 2012)

---

[4] In this case, the distinction between the ability to perform fingering and handling frequently versus occasionally appears to be dispositive. At the hearing, the VE identified a number of jobs that an individual with the limitations contained in the RFC could perform. (Tr. 57-58.) When asked what would be the impact of changing the handling and fingering restrictions to occasionally in the context of sedentary work, the VE testified that no jobs would be available. (Tr. 58.) As such, the ALJ's failure to explain his reasons cannot be dismissed as harmless error.

[5] The omission of an at-will sit/stand option may have been harmless, as the VE testified that such an additional limitation would not affect the jobs identified if the individual stayed on task. (Tr. 59.) However, the VE testified that the need for additional breaks would be excessive for most employers and would preclude employment. (Tr. 59-60.)

10

(finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion without identifying any contradictory evidence or explaining which findings were unsupported). Finally, the decision lacks any indication that ALJ considered the factors set forth in 20 C.F.R. § 416.927(c)(2), or at least did not sufficiently explain how those factors weighed against assigning greater weight to Dr. Subramanian's opinion.

The Commissioner's brief notes that the ALJ gave great weight to the opinions of Dr. Lewis and Dr. Green, non-examining state agency physicians. (ECF No. 18 at 14.) To the extent the Commissioner is suggesting that the ALJ properly rejected the opinion of a treating physician because it conflicted with the opinions of non-examining physicians, such an argument is without merit. This Court has previously ruled that an ALJ cannot base his or her rejection of a treating physician's opinion upon its inconsistency with the opinions of non-treating physicians. *See Brewer v. Astrue*, 2011 WL 2461341 at \*7 (N.D. Ohio Jun. 17, 2011) ("To do so would turn the treating physician rule on its head [as] [i]t is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician."); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th 2013) ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the

11

Secretary's consultant.")

The Court finds that the ALJ erred by not giving good reasons for rejecting the limitations assessed by Middaugh's treating physician, Dr. Subramanian. Middaugh's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial economy.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: June 18, 2014